563 A.2d 918

COMMONWEALTH of Pennsylvania

v.

Michael CANNON, Appellant.

COMMONWEALTH of Pennsylvania

v.

Gregory REAP, Appellant.

Superior Court of Pennsylvania.

Argued March 9, 1989.

Filed Aug. 18, 1989.

Cynthia A. Smith, Wilkes–Barre, for Cannon, appellant (at 2682) and for Reap, appellant (at 2683).

Joseph Giebus, Wilkes–Barre, Asst. Dist. Atty., for Com., appellee. (Submitted)

Before CAVANAUGH, BECK and CERCONE, JJ.

CERCONE, Judge:

These are appeals from the judgments of sentence of the Court of Common Pleas of Luzerne County. We affirm in part, reverse in part and remand for resentencing in accordance with this opinion.

Appellant, Michael Cannon was charged at No. 1006–C–1984 with one count of simple assault[1] on Edward Miller. Appellant, Gregory Reap, was charged at No. 675 of 1984 with two counts also concerning Edward Miller. The first count was aggravated assault[2] and the second count was simple assault.[3] Appellant Reap was further charged at 676 of 1984 with one count of simple assault[4] as to Charles Infantino. After a jury trial, on March 22, 1985 both appellants were convicted of all counts. The Honorable Arthur D. Dalessandro presided over the trial and on March 19, 1986, heard oral argument on both appellants' motions for new trial and/or in arrest of judgment. On October 3, 1986, before ruling on appellants' motions, the trial judge was relieved of performing any judicial, legal or fact-finding decisions in the Luzerne Court of Common Pleas, both Criminal and Civil Divisions.

Thereafter, on March 24, 1987, the Honorable Gifford S. Cappellini (hereinafter referred to as the "reviewing judge") denied appellants' motions for new trial and/or in arrest of judgment. Appellants filed petitions to vacate the order of court. On August 13, 1987, Judge Cappellini dismissed appellants' petitions. A restitution hearing was commenced on June 10, 1988 and reconvened on July 22, 1988.

On August 4, 1988, the reviewing judge found from the record that the damages to the victim, Edward Miller, for medical and hospital treatment including pain and suffering which were attributable to appellant Cannon amounted to $6000. Appellant Cannon was placed on probation for two

1. 18 Pa.C.S.A. § 2701(a)(1).
2. *Id.* § 2702(a)(1).
3. *Id.* § 2701(a)(1).
4. *Id.*

years and ordered to pay the cost of prosecution and to make restitution in the amount of $250 a month.

The reviewing judge further found from the record that the damages attributable to appellant Reap for Mr. Miller's medical and hospital treatment, including pain and suffering, amounted to $33,000 and that the damages, medical and hospital treatment including pain and suffering sustained by Charles Infantino attributable to appellant amounted to $11,000. On the first count of No. 675 of 1984, the aggravated assault count regarding Mr. Miller, appellant Reap was placed on probation for ten years and ordered to pay the cost of prosecution and to make restitution in the amount of $275 a month to Mr. Miller. On the second count of No. 675 of 1984, the simple assault count relating to Mr. Miller, appellant Reap was given the same sentence as the first count, except he was placed on probation for two years to be served concurrently with the sentence for the first count. On the simple assault count pertaining to Mr. Infantino at No. 676 of 1984, appellant Reap was sentenced to two years probation to be served concurrently with the sentence at No. 675 of 1984 and he was further ordered to pay the cost of prosecution and make restitution in the amount of $91.67 a month to Mr. Infantino. Appellants filed timely appeals from the judgments of sentence.

The facts, as determined by the lower court, are as follows: On August 25, 1983, Charles Infantino's wife rejected the advances made by Paul Lumia in the lobby of the Woodlands, a drinking and dancing establishment located in Wilkes–Barre. A verbal exchange ensued between Mr. Infantino and Mr. Lumia. Mr. Lumia was then instructed by a manager to leave the Woodlands. Thereafter, Mr. and Mrs. Infantino left the Woodlands accompanied by Mr. and Mrs. Miller and proceeded in a northerly direction on Route 315 in Wilkes–Barre. The appellants, along with Mr. Lumia, were passengers in a vehicle that followed the victims' vehicle. At a traffic light, the appellants pulled alongside their victims and yelled obscenities at them. The appellants then followed the victims' vehicle, bumped it, threw beer

bottles at it, and ran it off the road into a construction ditch. Thereafter, the appellants and their companions assaulted Mr. Infantino and Mr. Miller, causing serious bodily injuries to them.

On appeal, appellants raise seven issues for our review: (1) that the trial court erred in refusing their requested points for charge on (a) the justification defense; and (b) mutual combat; (2) that the trial court erred in granting the Commonwealth's motion *in limine* with regard to one of the victim's wire fraud conviction; (3) that the trial court erred in refusing to permit appellants to engage in more extensive cross-examination of the victim after the Commonwealth, on redirect examination, elicited the victim's wire fraud guilty plea; (4) that the reviewing judge erred in not vacating the March 24, 1987 order of court denying appellants' motions for new trial and/or in arrest of judgment; (5) that appellants' sentences were improperly imposed by a judge who did not preside over the trial; (6) that the reviewing judge improperly allowed exhibits into evidence at both the restitution and sentencing hearings over appellants' objections; and (7) that the reviewing judge abused his discretion in sentencing appellants. We will address each of these issues *seriatim.*

Appellants' first contention is that the lower court erred in refusing to charge the jury as to the defense of justification or on the defense of mutual combat. We disagree. Mutual combat infers that both parties "agreed" to fight and that there was no aggressor. *See Commonwealth v. Coleman,* 344 Pa.Super. 481, 496 A.2d 1207 (1985) (wherein evidence that the victim got out of his car, charged the defendant and a fight ensued, but there was no clear evidence of who threw the first punch supported inference that fight was entered into by mutual consent.)

In order to be entitled to an instruction on justification as a defense to a crime charged, our supreme court in *Commonwealth v. Capitolo,* 508 Pa. 372, 498 A.2d 806 (1985) held that the actor must first offer evidence that will show: (1) that he was faced with a clear and imminent

harm, not one which is debatable or speculative; (2) that he could reasonably expect that his actions would be effective in avoiding this greater harm; (3) that there is no legal alternative which will be effective in abating the harm; and (4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue. *Capitolo*, 508 Pa. at 378, 498 A.2d at 809. The trial court may disallow the justification defense if a defendant fails to proffer sufficient evidence to establish even one of the above factors. *Capitolo*, 508 Pa. at 379, 498 A.2d at 809.

Utilizing the above analysis, we agree with the trial court that, as a matter of law, appellants were not entitled to a jury charge of justification or mutual combat. First, it is entirely clear from the record that the appellants and their companions were not free from fault in provoking or continuing the difficulty resulting in the injuries to the victims. By appellants' own testimony, five confrontations took place on the night in question. The initial conflict occurred when Mr. Lumia was in the bar and was asked to leave. The second incident occurred on the road when appellants and their friends pulled up alongside the victims' car, threw beer cans at them, shouted obscenities and goaded them to follow appellants and their companions as they turned right off of the main highway. When the victims did not follow, appellants and their friends turned their vehicle around and began to chase the victims, flash their high beams at the victims and bump the victims' car. Finally, the vehicle in which the appellants were driving forced the victims' car off of the road into a ditch at a construction site and the appellants and their colleagues immediately jumped out of their car to confront the victims for the final time.

It is clear from our review of the record that the appellants and their friends initially were and remained the aggressors throughout the altercation. Second, no evidence was introduced which would indicate that they made any attempt to retreat. After each of the four confrontations before the final one, they were free to leave and not return.

The fact that they continued to pursue their victims after each confrontation clearly shows that they were the aggressors. Accordingly, the trial court did not err by refusing appellants' requests for a jury instruction on justification or mutual combat. These claims therefore must be rejected.

■ Appellants' second contention is that the trial court erred in granting the Commonwealth's motion *in limine* with regard to the victim, Mr. Miller's wire fraud conviction. As the lower court correctly noted, despite granting the Commonwealth's motion *in limine*, the Commonwealth elicited information from Mr. Miller with regard to his wire fraud conviction. Appellants' arguments, therefore, are moot since if there was error, it did not effect the proceedings at trial.

■ Appellants go on to contend that it was error for the trial court to refuse to allow them to engage in more extensive cross-examination of Mr. Miller once he testified that he pleaded guilty to wire fraud. Initially, the lower court correctly noted that at the time of trial, appellants did not object to the Commonwealth recalling Mr. Miller regarding this prior conviction and instead chose to cross-examine Mr. Miller on this issue. Thus, appellants have waived this issue for appeal. *Commonwealth v. Bullock*, 359 Pa.Super. 150, 518 A.2d 824 (1986) (wherein we held that failure to object to an offer of evidence at the time the offer is made, assigning grounds for objection, is waiver upon appeal of any ground of complaint against admission). When the trial court limited cross-examination to name, time and place of the crime, appellants did not question Mr. Miller as to any punishment he may have received. Further, appellants did not raise any objection in their post-verdict motions. Thus, appellants have not specifically preserved the issue of cross-examination after Mr. Miller testified to his wire fraud guilty plea on redirect examination and we need not address appellants' contention with regard to the scope of cross-examination. *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979) (wherein we held that an issue not

included in written post-verdict motions would not be considered properly preserved for appellate review).[5]

The fourth issue appellants raise is that the March 24, 1987 order of court denying their motions for new trial and/or in arrest of judgment should have been vacated. Specifically, appellants contend that since the trial judge presided over the trial and heard oral arguments on the post-trial motions, it was improper for the reviewing judge to decide the motion purely on the basis of the transcript without the benefit of being at the trial or hearing oral arguments.

In support of this argument, appellants rely on our decision in *Commonwealth v. Becker*, 337 Pa.Super. 467, 487 A.2d 40 (1985). In *Becker*, there was an appeal from an order denying a motion for new trial on the ground of after-discovered evidence. The order was entered by a judge other than the trial judge. We held that this was contrary to Pa.R.Crim.P., Rule 1123(e), 42 Pa.C.S.A. and remanded the case for the trial judge to resolve. The instant case is distinguishable from the situation in *Becker* in that the trial judge in the case *sub judice* was unable to decide appellants' motions because he had been relieved of his duties. The facts in *Becker* did not include such complete unavailability of the trial judge, but rather the trial judge in *Becker* simply did not decide the motion for new trial.[6]

5. In a recent plurality opinion, our supreme court held that an appellant's untimely filed post-trial motions were incorrectly deemed waived by this court when they were addressed by the lower court in its opinion. *Kurtas v. Kurtas*, 521 Pa. 105, 555 A.2d 804 (1989). We do not view the holding in *Kurtas* to be a complete condonation of an egregious failure to properly preserve issues at trial or in post-verdict motions as in the instant case.

6. The other cases relied upon by appellants, *Hyman v. Borock*, 211 Pa.Super. 126, 235 A.2d 621 (1967), *Commonwealth v. Claney*, 113 Pa.Super. 439, 173 A. 840 (1934) and *Ciaffoni v. Ford*, 211 Pa.Super. 472, 237 A.2d 250 (1968) are distinguishable. The facts in the *Hyman* and *Ciaffoni* cases involved a judge sitting without a jury. While the facts in *Claney* involved a jury trial, it is nonetheless distinguishable since the trial judge in that case became ill and a second judge charged the jury. Thus, the proceedings in the *Claney* case, were not

The court is a tribunal or judicial agency of government that is separate from the individuals who compose it; it is a continuing body that survives the death of its members. *Chuplis v. Steve Shalamanda Coal Co.*, 192 Pa.Super. 76, 159 A.2d 520 (1960). An order entered by a judge other than the one who heard the case is not thereby rendered void. *Id.* The death, disqualification or absence of a judge will not deprive the surviving or remaining judges of authority to hold court and transact the business of the court and in fact to exercise all functions pertaining to the particular court. *Lockhart v. Longmore*, 189 Pa.Super. 455, 151 A.2d 829 (1959).

The case at bar was decided by a judge sitting with a jury. Once the trial judge was relieved of performing any judicial, legal or fact-finding decisions, there was no option other than to have a different judge resolve the post-verdict motions. Since the trial proceeded before a jury, deciding issues of credibility and reasonable doubt were the function of the jury rather than the trial judge. *Commonwealth v. Pacell*, 345 Pa.Super. 203, 497 A.2d 1375 (1985). The jury is merely bound to take the law from the the the trial court to apply to the facts that they find. *Commonwealth v. Zeger*, 200 Pa.Super. 92, 186 A.2d 922 (1962).

The reviewing judge in the instant case read through the trial transcript and entered an order denying appellants' post-verdict motions. This procedure was proper under the circumstances since (1) there was a jury trial such that all issues of credibility and reasonable doubt were resolved by the jury; (2) the trial judge was relieved of his duties so as to prevent him from making a determination on the legal issues raised by the appellants; and (3) the reviewing judge analyzed the legal questions raised in appellants' post-verdict motions after making an independent review of the trial transcript. We therefore find that the reviewing judge did not err in upholding his March 24, 1987 order of court denying appellants' motions for new trial and/or in arrest

complete when the substitution was made. None of these cases, therefore, is applicable to the case *sub judice*.

of judgment. *Also see, Commonwealth v. Zietz,* 364 Pa. 294, 72 A.2d 282 (1950) (wherein we held that where a judge before whom an action is tried becomes disabled, resigns or dies, a motion for new trial may be made before and ruled upon by another judge of the same court or by a specially appointed judge).

Appellants' fifth point of error is that they were improperly sentenced by the reviewing judge who did not preside over the trial. This issue arises because of the reasons set forth above. Specifically, the trial judge was relieved of his duties after presiding over the jury trial and hearing oral argument on post-verdict motions, but before resolving the post-verdict motions or sentencing appellants. When a defendant is tried before one judge who also disposed of the post-trial motions, the imposition of sentence by another judge is improper where there is no showing of extraordinary circumstances. *Commonwealth v. Vagnoni,* 272 Pa.Super. 396, 416 A.2d 99 (1979). Sentencing or suspension thereof of a person convicted of a crime can only be performed by the judge who tried the case, except in cases of imperative necessity. *Commonwealth v. Rhoads,* 227 Pa.Super. 197, 323 A.2d 249 (1974).

It would have been impossible, in the instant case, for the trial judge to sentence appellants. As discussed above, the trial judge was ordered by our supreme court to cease all judicial functions. Under such extraordinary circumstances, the available alternative was to allow another judge to sentence appellants. The reviewing judge ascertained all of the available facts arising from this case and imposed a sentence in accordance with the controlling law. We find that given the imperative necessity that existed in this case, there was no error in the reviewing judge sentencing appellants even though he did not preside over the trial. *Id.*

The next issue for our review is whether the lower court erred in allowing exhibits into evidence over appellants' objections at the restitution and sentencing hearings. Appellants objected to thirty-one of the forty-five exhibits presented to the court during the two hearings. In their

briefs, appellants separate the exhibits into four groups of objections.

The first group of exhibits is a compilation of doctor's notes, hospital records, statements and doctor's reports that the appellants objected to as being hearsay. The appellants recognize that a medical report is admissible under the business records exception to the hearsay rule if: (1) it was made contemporaneously with the events it purports to relate; (2) at the time the report was prepared, it was impossible to anticipate reasons which might arise in the future for making a false entry in the original; and (3) the person responsible for the statements contained in the report is known. *Isaacson v. Mobil Propane Corporation,* 315 Pa.Super. 42, 49, 461 A.2d 625, 629 (1983). Medical records may be introduced for limited purposes such as to show the fact of hospitalization, treatment prescribed and the symptoms reported. *Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975).

The appellants object to the admissibility of these items on the allegations that (1) the Commonwealth failed to establish a causal connection between the record history and the injuries sustained by the victim; (2) there was no effort to establish that the records were contemporaneously made; and (3) the person responsible for the statements was not known with respect to one report. Our perusal of the record, however, initially reveals that there was testimony at trial supporting a causal connection between the assault and the injuries sustained by Mr. Miller. Our further examination of the record reveals that the reviewing judge accepted these exhibits over appellants' objections on the basis that they were connected to the injuries sustained by the victim, Mr. Miller. The reviewing judge repeatedly stated that he would admit the records because they were connected to the matter before the court and if he later found that they were not connected, he would disregard them.

As to the second and third objections to this group of exhibits, our review of the record reveals that the appel-

lants did not specifically raise these objections either at the time these exhibits were admitted into evidence or in their post-trial motion. Thus, appellants have failed to preserve these issues for our review. *Commonwealth v. Capitolo*, 508 Pa. 372, 498 A.2d 806 (1985) (matter not raised in trial court cannot be considered on appeal); *Commonwealth v. Johnson*, 368 Pa.Super. 427, 534 A.2d 511 (1987) (failure to raise issue, objection or argument in timely manner during trial forecloses further review of alleged error in post-trial motions or at appellate level). We therefore do not consider the second and third objections raised by appellants. We find that the lower court did not err in admitting the first group of exhibits about which appellants complain.

Appellants object to a second group of exhibits on the basis that it consists of records and statements that relate to an elbow injury which was claimed as a work-related injury. Specifically, appellants contend that if the elbow injury is work-related such that the victim is able to obtain compensation, it cannot also be causally related to the injuries obtained from the assault which is the subject of restitution. Appellants therefore conclude that since $11,-758.27 relating to this elbow injury was paid by workmen's compensation, Mr. Miller's claim for these damages should be disallowed.

Initially, we note that the appellants appear to be confused as to the purpose of restitution. Restitution does not enable a victim to make a claim for damages in a criminal trial. Although it aids the victim, an order of restitution is not an award of damages, but its true purpose is the rehabilitation of the defendant. *Commonwealth v. Galloway*, 302 Pa.Super. 145, 161, 448 A.2d 568, 576 (1982) (*quoting, Commonwealth v. Fuqua*, 267 Pa.Super. 504, 508, 407 A.2d 24, 26 (1979)). Second, the contractual obligation of a crime victim to reimburse an insurance company with proceeds recovered as a result of a restitution order does not require a court to subtract from its restitution order any sums received by the victim from insurance proceeds. *Commonwealth v. Kerr*, 298 Pa.Super. 257, 444

A.2d 758 (1982). Third, the victim admitted that he incurred a previous injury to his elbow, which was work-related. However, the claim before the trial court was that the victim incurred additional injury to the same elbow. Injuries that are unrelated to a workmen's compensation claimant's job are compensable if they are the proximate, natural and probable result of prior work-related injuries. *Bush v. Workmen's Compensation Appeal Board*, 92 Pa.Commw. 506, 499 A.2d 730 (1985). The rationale is that but for its weakened condition as a result of a work-related injury, the victim would not have sustained the same extent of injury to his elbow in the non-work incident. Therefore, appellants' position that the victim's receipt of workmen's compensation was inconsistent with his contention that his elbow was injured during the assault is without merit. The second group of exhibits was properly admitted by the reviewing court.

 The third group of exhibits is related to the victim's back injury. The appellants object to the admissibility of these exhibits on the basis that the back injury has no causal connection to the crime for which appellant was convicted. The appellants specifically rely on an excerpt taken from the deposition transcript of John H. Doherty, Jr., M.D. in support of his position. This excerpt states:

> My feeling is that most likely, *based on Mr. Miller's history that he provided me* in the office that *one* time, that he had a growth plate abnormality which caused deformity of the bones T-12, L-1 and L-2. (emphasis added)

This excerpt is presented without an explanation of the surrounding circumstances. Our examination of the record reveals that the victim only visited Dr. Doherty on one occasion and the victim did not give the doctor an accurate history. He refused to inform the doctor that he was assaulted and specifically instructed his wife not to mention

28

the assault.[7] Dr. Doherty's testimony therefore, is not conclusive since it is based on incomplete information. Further, there was testimony at trial that supports a causal connection between the assault and the back injuries sustained by Mr. Miller. The reviewing court did not err in admitting the group of exhibits relating to Mr. Miller's back injuries.

Appellants allege that the final group of exhibits was withdrawn by the witness as pertaining to services not performed. Once again, the appellants appear to have presented a selective view of the exhibits. Contrary to the appellants' position, the victim did not withdraw these exhibits nor did he admit that the services were not performed. The particular testimony to which appellants refer begins with defense counsel asking the victim a series of questions about whether the victim had a copy of a variety of medical records. The victim repeatedly responded that he did not know whether or not he had the particular documents in question. Defense counsel continued questioning the victim as follows:

Q Did you receive these bills?

A I don't remember.

Q Do you intend to include those as part of your damages?

A I believe they're on it. If there's a dispute, no, I don't.

. . . .

Q Are you withdrawing them because the work wasn't done?

At this point, counsel for the victim raised an objection, and the victim never responded to defense counsel's last question. It is clear from our review of the victim's testimony that he neither withdrew the exhibits in question nor did he state that the work was not done. Finding no merit to

7. The record is replete with testimony that the victim, Mr. Miller, was experiencing a period of denial. He had a difficult time admitting that he had been so brutally assaulted.

appellants' contention, we conclude that the reviewing court correctly admitted the exhibits in question.

Appellants' last issue concerns sentencing. Although appellants caption this portion of their brief: "Statement of Reasons for Allowance of Appeal Regarding Discretionary Aspects of Sentence Pa.R.A.P., Rule 2119(f)," appellants not only question the discretionary aspects of sentencing, but also the legality of sentence. Specifically, appellants allege that it was illegal for the lower court to impose restitution which included the victim's pain and suffering. The illegality of a sentence of restitution is not a waivable issue and therefore, we must address appellants' contention. *Commonwealth v. Balisteri*, 329 Pa.Super. 148, 478 A.2d 5 (1984). A legality issue is essentially a claim that the trial court did not have jurisdiction to impose the sentence that it handed down. A trial court ordinarily has jurisdiction to impose any sentence which is within the range of punishments which the legislature has authorized for the defendant's crimes. *Commonwealth v. Smicklo*, 375 Pa.Super. 448, 453, 544 A.2d 1005, 1008 (1988) (*en banc*) (quoting, *Commonwealth v. Smith*, 375 Pa.Super. 419, 426, 544 A.2d 991, 994 (1988) (*en banc*)).

Restitution was granted in accordance with 18 Pa.C.S.A. § 1106 which specifically states:

(a) **General Rule.**—Upon conviction for any crime ... wherein the victim suffered personal injury directly resulting from the crime, the offender may be sentenced to make restitution in addition to the punishment prescribed therefor.

. . . . .

(h) **Definitions.**—

. . . . .

"Personal Injury." Actual bodily harm, including pregnancy, directly resulting from the crime.

In *Balisteri, supra,* we held that "actual bodily harm" within the meaning of the restitution statute included actual emotional or mental disturbances. However, we declined to

determine whether restitution could be properly awarded for general damages such as pain and suffering. *Balisteri,* 329 Pa.Super. at 156, n. 8, 478 A.2d at 9, n. 8. Because the statute is penal in nature, it must be strictly construed. *Commonwealth v. Wooten,* 519 Pa. 45, 545 A.2d 876 (1988); Statutory Construction Act, 1 Pa.C.S.A. § 1928(b)(1). Our reading of this statute at this time does not indicate that the legislature intended to include pain and suffering as part of restitution. The Commonwealth has not indicated its intent, nor have we found any decisional law extending the interpretations of the statute to include pain and suffering. Since the inclusion of pain and suffering in restitution is not legislatively mandated, the lower court has imposed an illegal sentence. *Commonwealth v. Smith, supra.* We therefore remand this case for resentencing in accordance with this opinion.[8]

Affirmed in part, reversed in part and remanded for resentencing. Jurisdiction relinquished.

---

8. Our resolution of this issue makes it unnecessary for us to address appellants' concerns with regard to the discretionary aspects of sentencing.